## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOUGLAS MINATEE, | : | |
| Petitioner, | : | Civil Action No. 10-770 (PGS) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| Respondents. | : | |

IT APPEARING THAT:

1.  On February 22, 2010, the Clerk received a document from Petitioner executed on a § 2254 form. <u>See</u> Docket Entry No. 1.

2.  The content of the document received was not amenable to clear understanding.  <u>See</u> <u>id.</u>  Specifically, it was unclear which particular determination Petitioner was challenging (<u>i.e.</u>, the determination issued by the state court on which particular date and with regard to which particular matter), whether Petitioner filed his application while being held in confinement pursuant to the very order he was wishing to challenge (or if Petitioner was held in confinement pursuant to a superceding order), whether Petitioner duly exhausted his claims in all three levels of the state court, as well as whether Petitioner has submitted his instant application timely.  <u>See</u> <u>id.</u>

3.  Consequently, this Court issued an order directing Petitioner to submit an amended petition clarifying the aforesaid

ambiguous aspects of Petitioner's challenges.   In order to assist Petitioner in that endeavor, the order detailed to Petitioner the relevant legal requirements.   See Docket Entry No. 2.   The order also advised Petitioner of his Mason rights.

4.   In response, Petitioner submitted an amended petition, see Docket Entry No. 3, the Clerk's receipt of which resulted in a premature reopening of this matter in the sense that it was conducted without screening of the amended petition, and without a determination of whether the amended petition warranted issuance of an order directing responsive pleadings. See Docket Entry No. 4.

5.   In light of the Clerk's premature reopening of this matter, this Court screened the amended petition and -- upon observing that Petitioner still failed to clarify the ambiguities of his original petition -- found it prudent to administratively re-terminate the matter and allow Petitioner another opportunity to clarify the ambiguities of his application.   See Docket Entry No. 5.   Consequently, the Court vacated the order directing reopening and provided Petitioner with additional time to submit a superceding re-amended petition.   See id.

6.   Petitioner duly complied with the Court's directive by submitting his re-amended pleading ("Petition").   See Docket Entry No. 7.   While the Petition, still asserting jurisdiction

2

under § 2254, is not a document stating Petitioner's claims with absolute clarity, see id., the content of the Petition is sufficient for the Court to determine at least the gist of Petitioner's claims and to address the dispositive aspects of his submission.    See id.   Specifically, it appears that Petitioner, being a civilly committed individual currently confined at the Special Treatment Annex, Avenel, New Jersey, was – at a certain point in time – allowed to participate in a certain state furlough program which envisioned a certain number of furlough periods (or, perhaps, an unlimited number of such furlough periods).   It appears that Petitioner completed eleven of such furlough periods and was either about to start or even started the twelfth.   It also appears that, during his eleventh furlough (or during one of Petitioner's latest furloughs out of these eleven), Petitioner was staying with his cousin and – either prior to Petitioner's twelfth furlough or during that twelfth furlough – the state officials discovered that Petitioner's cousin had a criminal conviction (or a charge and ensuing investigation) based on Petitioner's cousin's sexual misconduct.   It also appears that this discovery caused the state officials great concern in light of Petitioner's status as a sexually violent predator; that concern, it seems, triggered an investigation by state officials and state-retained psychiatrists.   It appears from

3

the Petition that Petitioner developed an impression that the aforesaid investigation would protract for about half a year or so, and then Petitioner would be allowed to continue with his furlough program, but Petitioner's hopes did not materialize and – as of now – Petitioner is still prevented from partaking in the furlough program. (Petitioner, it seems, is of opinion that denial of continuous participation in the furlough program violates his rights.) It is unclear from the face of the Petition whether the investigation into Petitioner's stay with his cousin has concluded or is still ongoing, but it appears sufficiently certain that Judge Peretti of the Superior Court of New Jersey, Law Division, suspended Petitioner's twelfth furlough on September 19, 2007, and such suspension were to protract until Petitioner would be re-cleared by the state officials for further participation in the furlough program. See generally, Docket Entries Nos. 1, 3 and 7. Since Petitioner's hopes to re-start participating in the furlough program have not, thus far, materialized, Petitioner is challenging Judge Peretti's suspension order. See Docket Entry No. 7. Petitioner clarifies that he filed an application challenging Judge Peretti's suspension order with the Superior Court of New Jersey, Law Division, on or about

4

March 21, 2008,[1] but - in no ambiguous terms - the Petition states that Petitioner did not take any appeals and, as of now, does not know about the current status of his challenge to Judge Peretti's suspension order that was filed with the Law Division. See id. at 3.

7.   To start, Petitioner's challenges have to be dismissed for lack of jurisdiction in light of the Third Circuit law.  While the federal courts in the country are split as to whether challenges to denial of furlough could be raised in a habeas action, the Court of Appeals for the Third Circuit guided the district courts in this circuit that challenges based on denial of furlough fall outside the "core of habeas" and, hence, must be raised in a civil complaint. See Wright v. Cuyler, 624 F.2d 455 (3d Cir. 1980).  In Wright, prisoner brought two actions against prison superintendents asserting that they denied his participation in a home furlough program. The district court dismissed the prisoners' claims as unexhausted.  The Court of Appeals reversed finding that challenges based on denial to participation to home furlough program were attacking not the ultimate duration of his

---

[1]   The Court is not entirely clear as to the mode of that challenge.  In light of the fact that Petitioner addressed his challenge to the Law Division rather than to the Appellate Division, the Court presumes that Petitioner's challenge was made in the form of a motion for reconsideration or a mandamus application.

confinement but rather the conditions under which the prisoner was confined.  See id.  Therefore, under the holding of Wright, the instant application shall be dismissed for lack of jurisdiction.

8.  However, this Court cannot ignore the fact that the Court of Appeals' decision in Wright was rendered in 1980, and that holding might have been altered by the Court of Appeals' later decisions.  As the Court of Appeals observed lately,

> "the precise meaning of 'execution of a sentence' [remains] hazy."  Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. N.J. 2005).  In Woodall, considering rulings from the Courts of Appeals of the Second, Sixth, Ninth, and Tenth Circuits, and the plain meaning of the term "execution" (to put into effect or carry out), [the Court of Appeals for the Third Circuit] allowed a [habeas] challenge to regulations that limited a prisoner's placement in a community correction center ("CCC").  See id. at 243.  [The Court of Appeals for the Third Circuit] noted that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution."  Id. Specifically, in finding Woodall's action properly brought [as a habeas matter, the Court of Appeals for the Third Circuit] determined that "placement in a CCC represents more than a simple transfer." Id. W {therefore, the Court of Appeals for the Third Circuit] stated that "Woodall's petition crosse[d] the line beyond a challenge to, for example, a garden variety prison transfer [and was properly brought as a habeas]."  Id.

Ganim v. Fed. Bureau of Prisons, 235 Fed. App'x 882, 883 (3d Cir. N.J. 2007).  Revisiting the same issue two years after Woodall, the Court of Appeals further distinguished routine between-prison transfers from prisoner's challenges based on

denial of his/her placement in an environment qualitatively different from that of correctional facility. See id. at 883-84.

> The cases [the Court of Appeals for the Third Circuit] cited approvingly in Woodall were not challenges to routine transfers. [The Court of Appeals for the Third Circuit] relied in particular on Jiminian v. Nash, 245 F.3d 144 (2d Cir. 2001), Hernandez v. Campbell, 204 F.3d 861 (9th Cir. 2000), United States v. Jalili, 925 F.2d 889 (6th Cir. 1991), and Montez v. McKinna, 208 F.3d 862 (10th Cir. 2000). Jiminian used expansive language to state that "[a habeas application may] challenge[] the execution of a . . . prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." 245 F.3d at 146. . . . Hernandez, like Jiminian, described the use of [habeas] in broad strokes, noting that [applications raising habeas challenges] are those "that challenge the manner, location, or conditions of a sentence's execution." Hernandez, 204 F.3d at 865. . . . The prisoner in Jalili challenged the execution of his sentence, arguing that his confinement in a secure prison instead of a community treatment center violated the terms of his sentence. See 925 F.2d at 891-92. As in Woodall, . . . the difference between the two facilities was great. Similarly, the transfer at issue in Montez was no simple transfer within the same system - the prisoner challenged transfers from a Wyoming state-operated prison to a private Texas correctional facility and from the Texas facility to a private Colorado correctional facility. See 208 F.3d at 864.

Id. at 884.

Hence, this Court cannot rule out the possibility that – in light of the considerations underlying the Court of Appeals' decisions in Woodall, Ganim and analogous matters,

Petitioner's challenges to denial of furlough might be entertained in a habeas action in spite of the holding of Wright; such conclusion necessarily suggests that this Court would have jurisdiction to address Petitioner's § 2254 challenges, that is, provided that these challenges are both timely and duly exhausted in all three levels of the state court.

9.   Here, if the Court has jurisdiction over this habeas matter, Petitioner's challenges have to be dismissed as unexhausted and/or untimely.   If this Court is to hypothesize that Petitioner did not appeal Judge Peretti's determination (and his motion for reconsideration of Judge Peretti's decision did not toll his appeal period), it is self-evident that Petitioner's instant challenge to Judge Peretti's decision (issued on September 19, 2007) is time-barred, since Petitioner's one-year period of limitations under the AEDPA began to run at the time when Petitioner's time to appeal Judge Peretti's decision to the Appellate Division expired, and that one year -- in turn -- expired long before Petitioner handed his original petition in this matter to his Avenel officials for mailing to this Court.[2]   Thus, the Petition has

_____

[2]   While the original petition is dated as of March 21, 2008, see Docket Entry No. 1, at 12; Petitioner's letter accompanying the original petition is dated as of February 8, 2010, see Docket Entry No. 1-3, at 1, which indicates that Petitioner could not have submitted his original petition to his

to be dismissed, with prejudice, as untimely. Moreover, even if this Court is to hypothesize that Petitioner has valid grounds for equitable tolling but -- in spite of the Court's detailed clarification of the statute of limitation requirements and the equitable tolling aspect provided in the Court's first order issued in this matter, <u>see</u> Docket Entry No. 2, -- Petitioner somehow omitted stating his grounds for equitable tolling, the Petition is nonetheless subject to dismissal (although, without prejudice) for failure to exhaust state court remedies: this is so because the Petition unambiguously indicates that Petitioner's challenges were presented only to the Law Division, and no appeal was brought before the Appellate Division, and no certification was sought from the Supreme Court of New Jersey.

10. Finally, even if this Court were to consider whether it would be appropriate to re-characterize, under the holding of <u>Wright</u>, Petitioner's instant habeas challenges into civil right challenges, such re-characterization would be unwarranted.[3] This is so because, so re-characterized, Petitioner's challenges would yield invalid due process

---

Avenel officials for mailing to this Court prior to February 8, 2010.

 [3] The Court notes, in passing, that such re-characterization would also subject Petitioner to a different filing fee requirement (<u>i.e.</u>, here, Petitioner paid $5 filing fee, but the filing fee for a non-habeas civil action is $350).

9

allegations.   Indeed, a very similar issue was addressed in
Briggs v. Fields, 1995 U.S. App. LEXIS 18069 (10th Cir. 1995),
where the Court of Appeals for the Tenth Circuit addressed
claims of an inmate who filed a 42 U.S.C. § 1983 action
seeking redress for denial of furloughs.   The Tenth Circuit
explained as follows:

> [Here, the inmate] complains that [a change in] the
> furlough statute . . . deprived him of a legal
> right . . . .   Under the Due Process Clause, [an
> inmate] can challenge the conditions of his
> confinement if the state "imposes atypical and
> significant hardship on the inmate in relation to
> the ordinary incidents of prison life." Sandin v.
> Conner, 515 U.S. 472 (1995). [A] deprivation of the
> ability to participate in a furlough program is
> [not] an "atypical and significant hardship." . . .
> [O]ur conclusion is supported by the fact that
> prison officials maintain unconstrained discretion
> in whether to grant furloughs – [the] law never
> provided prisoners with an absolute right to
> participate in a furlough program.

Id. at 3-6 (footnote 4 incorporated).

11.   Arguably, it is not immediately clear whether the holding of
Briggs (examining claims raised by a prisoner and, hence,
providing an analysis based on Sandin) is applicable to the
case at bar since Petitioner here is a civilly committed
individual rather than a prisoner.   Generally, the courts in
the Third Circuit have repeatedly applied the standard set
forth in Youngberg[4] to 1983 suits brought by involuntarily

---

[4]   In Youngberg v. Romeo, the Supreme Court formulated a
balancing test to "determine whether a substantive right
protected by the Due Process Clause has been violated."   457 U.S.

committed civil patients alleging due process violations. See, e.g., Brandt v. Davy, 2006 U.S. Dist. LEXIS 8835 (D.N.J. Mar. 2, 2006) (applying Youngberg). The reason for the distinction ensues from the long-established proposition that lawful incarceration, unlike civil commitment and pretrial detainment, "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotation omitted). Consequently, the Third Circuit has generally maintained that an involuntarily committed patient's liberty interests are to be balanced against the state's interest in maintaining order, as expounded on in Youngberg. See, e.g., Halderman v. Pennhurst State School & Hosp., 707 F.2d 702 (3d Cir. 1983).

12. That being said, the Third Circuit has recently extended Sandin to certain group of civil commitment challenges. For

---

307 (1982). The Court held, inter alia, that mental patients retain certain liberty interests, including personal security and the freedom of movement, often referred to as the freedom from bodily restraints. See id. Under Youngberg, a court must weigh two competing values, "the liberty of the individual and the demands of an organized society." Id. (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961) (Harlan, J. dissenting)). "[I]n balancing the state's interests against a confined person's liberty interests the balance should not be left to the unbridled discretion of judge or jury." Scott v. Plante, 691 F.2d 634, 637 (3d Cir. 1982). At its most basic level, the Fourteenth Amendment gives rise to a "State duty to provide reasonable safety for all residents and personnel within the institution." Brandt v. Aunach, 2005 U.S. Dist. LEXIS 27818 (D.N.J. Nov. 14, 2005) (quoting Youngberg, 457 U.S. at 324)).

instance, in <u>Deavers v. Santiago</u>, the Court of Appeals held,
<u>inter alia</u>, that <u>Sandin</u> applies to a convicted sex offender
civilly committed to an institution run by the NJDHS pursuant
to the Sexually Violent Predator Act.  <u>See</u> 243 Fed. App'x 719
(3d Cir. 2007).  Similarly, in <u>Rivera v. Rogers</u>, 224 Fed.
App'x 148 (3d Cir. 2007), the Third Circuit affirmed the
district court's decision to apply <u>Sandin</u> to a convicted sex
offender's challenge of his civil commitment conditions,
relying on the plaintiff's previous status as a prisoner:

> Given that [the plaintiff] has been convicted of a
> crime and is being detained in the Special
> Treatment Unit because of his classification as a
> sexually violent predator under New Jersey's
> Sexually Violent Predator Act, his status is
> similar to that of a prisoner and we agree with the
> District Court's decision to proceed with its
> analysis of his First Amendment claim by looking to
> case law interpreting a prisoner's rights.

13.  Here, Petitioner -- in no ambiguous terms -- asserts that
his civil commitment is a result of Petitioner's
classification as a sexually violent predator, and the
commitment was triggered after Petitioner "maxed out" on
his underlying sentence based, in turn, on his sexual
misconduct.  <u>See</u> Docket Entry No. 1, at 2.  Therefore,
Petitioner's due process challenges are subject to <u>Sandin</u>
test and, under the above-discussed thoughtful discussion
provided by the Tenth Circuit in <u>Briggs</u>, Petitioner's due
process challenges are subject to dismissal.  In light of

12

the foregoing, any re-characterization of Petitioner's instant application into a civil complaint would be futile, since it would result in dismissal of Petitioner's allegations for failure to state a claim upon which relief can be granted. For the foregoing reasons, the Petition will be dismissed for lack of jurisdiction, or -- in alternative -- dismissed with prejudice as untimely or without prejudice for failure to exhaust state remedies, and re-characterization of the application at hand will be undertaken as unwarranted in light of Petitioner's failure to state a cognizable due process claim.

14. Finally, the Court must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. See

13

Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. Similarly, where the district court reached the merits of the claims, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not conclude either that this Court erred in dismissing the petition or that Petitioner should be allowed to proceed further. Moreobver, Petitioner's application failed to make a substantial showing of the denial of a constitutional right. Consequently, regardless of whether the Petition is dismissed on procedural grounds or upon substantive

assessment of Petitioner's claims, a certificate of appealability shall not issue.

For the foregoing reasons, the Petition will be dismissed and a certificate of appealability will not issue. An appropriate Order accompanies this Memorandum Opinion.

_____
**Peter G. Sheridan, U.S.D.J.**

Dated:

15